IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**SYLVESTER PREWITT**                                                               **PLAINTIFF**

No. 3:12-CV-00048-BD

**MICHAEL J. ASTRUE, Commissioner,**                               **DEFENDANT**
**Social Security Administration**

### ORDER REMANDING TO THE COMMISSIONER

Sylvester Prewitt seeks judicial review of the denial of his applications for disability insurance benefits and supplemental security income. Mr. Prewitt based his disability application on arthritis in his right knee and arm, and on back and hand problems.[1]

In applying for disability benefits, Mr. Prewitt stated that he had not worked full-time since 2001.[2] He later reported full-time work as a parts assembler for Hino Motors Manufacturing in 2007.[3] The Commissioner's earnings worksheets reflected work in 2008.[4] When the ALJ asked about work,

---

[1] SSA record at p. 166.

[2] *Id*. at p. 131.

[3] *Id*. at pp. 179-80, 194 & 209.

[4] *Id*. at p. 116, 125 & 128.

Mr. Prewitt acknowledged working for Hino in 2008.[5] Mr. Prewitt's reasons for not working ranged from "being laid off"[6] to "because of his medical conditions."

**The Commissioner's decision**. After considering Mr. Prewitt's applications, the Commissioner's ALJ determined that Mr. Prewitt had severe impairments—degenerative joint disease of the lumbar spine and dysfunction of the right hand— but that he had the residual functional capacity ("RFC") to perform a reduced range of light work.[7]

Because the vocational expert identified jobs a person with Mr. Prewitt's RFC could do,[8] the ALJ concluded that Mr. Prewitt was not disabled under the Social Security Act and denied the application.[9] After the Appeals Council denied Mr. Prewitt's request for review,[10] the ALJ's decision became a final

---

[5] *Id*. at p. 23.

[6] *Id*. at pp. 150, 161, 166, 187 & 193.

[7] *Id*. at p. 13 (limiting Mr. Prewitt to: (1) no kneeling or squatting, (2) occasional grasping with the dominant upper extremity, and (3) avoidance of fingering with the dominant upper extremity).

[8] *Id*. at p. 35.

[9] *Id*. at p. 18.

[10] *Id*. at p. 1.

decision for judicial review.[11] Mr. Prewitt filed this case to challenge the ALJ's decision.[12]

**Credibility**. Mr. Prewitt alleged that he could hardly use his hands; he had little strength in his hands; and he experienced pain in his back, shoulders, arms, and knees.[13] He maintained his medical conditions prevented him from prolonged standing, bending over, reaching over his head, lifting, and using his right hand.[14] The ALJ found these allegations to be less than fully credible.[15] In this appeal, Mr. Prewitt challenges the ALJ's credibility assessment.[16]

An ALJ has a statutory duty "to assess the credibility of the claimant…."[17] A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ

---

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 2.

[13]SSA record at pp. 144, 150-51, 193 & 217.

[14]*Id*. at pp. 25, 190, 193, 220 & 234.

[15]*Id*. at p. 15 (stating, "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the…[RFC] assessment").

[16]Docket entry # 11, pp. 15-17.

[17]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

explicitly discredits a claimant's testimony and gives a good reason for doing so."[18] To evaluate Mr. Prewitt's credibility, the ALJ followed the required two-step process[19] and considered the required factors.[20] Thus, the question before the court is whether substantial evidence[21] supports the ALJ's credibility assessment.[22]

In discounting Mr. Prewitt's credibility, the ALJ discussed: (1) the absence of medical evidence substantiating Mr. Prewitt's allegations; (2) the lack of evidence showing Mr. Prewitt had sought no-cost or low-cost medical treatment,

---

[18]*Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

[19]*See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[20]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). *See* SSR 96-7p, Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.

[21]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[22]*See Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court must determine whether the ALJ's decision is supported by substantial evidence in the record as a whole).

(3) Mr. Prewitt's testimony that he was doing okay mentally despite depression, and (4) Mr. Prewitt's activities of daily living. These reasons were good reasons for discounting Mr. Prewitt's credibility.

The ALJ's reasons were supported by substantial evidence. For example, there was little medical evidence to substantiate the alleged level of severity—treatment notes for five emergency room visits between July 2005 and April 2009,[23] two agency-ordered consultative examinations,[24] and agency-ordered xrays of the right knee and lumbar spine.[25]

The xray of the right knee showed a normal knee, and thus contradicted the allegation of limitation flowing from the right knee. The xray of the lumbar spine showed "mild" arthritic changes with "small" bony outgrowths anteriorly

---

[23]SSA record at p. 251 (on July 16, 2005 for contusion to right knee); p. 248 (on May 9, 2007 for complaints about tingling in right fingers and trouble gripping items; Mr. Prewitt left without being seen); p. 299 (on May 1, 2008 for numbness in both hands and decreased hand strength); p. 291 (Nov. 4, 2008 after motor vehicle accident); p. 283 (on Apr. 9, 2009 one week after motor vehicle accident).

[24]*Id*. at pp. 267 & 281.

[25]*Id*. at p. 272.

at discs L2-L4.[26] The adjectives "mild" and "small" contradicted Mr. Prewitt's allegation of disabling back impairment.

The most recent physical exam reported moderate limitations in manipulating with the right hand, and moderate limitations in bending, lifting, kneeling, crouching,[27] but no problems with the shoulders, arms, knees, or grip strength. The examination contradicted allegations of limitation in shoulders, arms, knees, and hand strength. Although Mr. Prewitt alleged he could not raise his arms over his head,[28] the Commissioner's field agent observed Mr. Prewitt raise his arms over his head.[29] A reasonable mind would accept the foregoing evidence as adequate to show Mr. Prewitt overstated his limitations, and thus, substantial evidence supported the ALJ's credibility assessment.

**Hypothetical question**. Mr. Prewitt also complains about the ALJ's hypothetical question. He maintains that the question did not include all of his

---

[26]*Id.* at p. 273.

[27]*Id.* at p. 271.

[28]*Id.* at p. 220.

[29]*Id.* at p. 190.

impairments; specifically, he complains about the omission of back pain, the inability to bend, and the need to lift with his non-dominant, left hand.[30]

"A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."[31] In posing a hypothetical question to a vocational expert, the ALJ may omit alleged impairments properly rejected as untrue or unsubstantiated.[32]

The ALJ implicitly rejected Mr. Prewitt's allegations of back pain and the inability to bend or lift by omitting those limitations from the hypothetical question.[33] Because vocational expert testimony constitutes substantial evidence only if the hypothetical question accounted for all of the claimant's proven impairments, the court must determine whether a reasonable mind would accept the evidence as adequate to show that Mr. Prewitt was limited by back pain and

---

[30]Docket entry # 11, pp. 17-18.

[31]*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

[32]*See Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011).

[33]*See* SSA record at p. 34 (asking about a person limited to light work, reduced by no squatting or handling, occasional grasping with dominant hand, and no fingering or fine manipulation with dominant hand).

the inability to bend or lift. If substantial evidence supported those allegations, the ALJ erred by omitting the limitations from the hypothetical question.

The agency-ordered physical examinations were highly probative of Mr. Prewitt's limitations because the ALJ gave them "great weight."[34] The first physical examination—in November 2007—reported mild limitations in bending and lifting.[35] The second physical examination—in February 2010—reported moderate limitations in bending and lifting.[36] Both reports diagnosed Mr. Prewitt with chronic back pain. A reasonable mind would accept this evidence as adequate to support limitations flowing from back pain, bending, and lifting. Thus, the ALJ erred by omitting those limitations from the hypothetical question. The next issue is whether the error was harmful.

To show harmful error, Mr. Prewitt "must provide some indication that the ALJ would have decided differently if the error had not occurred."[37] Mr. Prewitt

---

[34] *Id.* at p. 16 (giving "great weight" to opinions of state agency medical consultants knowledgeable in the assessment of functionality under the disability provisions of the Social Security Act).

[35] *Id.* at p. 265.

[36] *Id.* at p. 271.

[37] *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

relied on the vocational expert's answer to show harm, albeit for a different reason.[38] The vocational expert's testimony is nevertheless probative of Mr. Prewitt's claim because the vocational expert identified "cafeteria attendant" as available work.[39]

The job duties of a cafeteria attendant suggest the need to bend and lift because a cafeteria attendant : "Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth...."[40] Depending on a claimant's height and the height of food counters, tables, and chairs, the required duties could require bending to lift trays from food counters, remove dishes from tables, and wipe tables and chairs. Logically, the required duties could also require lifting in order to pick up food trays and dirty dishes for carrying.

The vocational expert did not consider limitations in bending or lifting because those limitations were omitted from the hypothetical question. Had the

---

[38] Docket entry # 11, p. 18 (arguing that a conflict existed between the job requirements of a cafeteria attendant and avoidance of fingering with the dominant upper extremity).

[39] SSA record at p. 35.

[40] Dictionary of Occupational Titles, code 377-010.

ALJ included those limitations, the vocational expert might have answered differently. And if the vocational expert had answered differently, the ALJ might have decided the case differently. As a result, the omissions were not harmless.

**Conclusion and remand order**. The ALJ erred by omitting some of Mr. Prewitt's impairments from the hypothetical question posed to the vocational expert. The error was harmful because the vocational expert might have testified differently had the question included all of Mr. Prewitt's impairments. For this reason, the court reverses the Commissioner's decision and remands this case for a proper hypothetical question.

On remand, the ALJ should pose a hypothetical question capturing the concrete consequences of all of Mr. Prewitt's impairments, to include back pain and limitations in bending and lifting, and then re-question the vocational expert.[41] The ALJ may accomplish the remand order through written interrogatories. After the vocational expert considers all of Mr. Prewitt's limitations and responds with available work, the ALJ should consider whether work exists that Mr. Prewitt can do. In the light of the remand, the court need

---

[41]*Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (citations omitted).

not address Mr. Prewitt's argument about conflicts with the Dictionary of Occupational Titles.[42]

It is so ordered this 12th day of February, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

---

[42]Docket entry # 12, pp. 9-10 (arguing that a cafeteria attendant's job requires frequent reaching, lifting, handling, and occasional fingering).